[Cite as *In re T.P.*, 2023-Ohio-3662.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re T.P.

Court of Appeals No. L-23-1175

Trial Court No.  JC 23294316

**DECISION AND JUDGMENT**

Decided:  October 6, 2023

* * * * *

Misty Goodrick and Emily K. Richter, for appellee.

Misty Wood, for appellants.

* * * * *

**MAYLE, J.**

{¶ 1} The appellants, A.D. ("mother") and L.P. ("father") appeal the July 7, 2023 judgment of the Lucas County Court of Common Pleas, Juvenile Division terminating their parental rights and granting permanent custody of their child, T.P., to Lucas County Children Services ("LCCS"), the appellee herein.  We affirm.

## I. Background

{¶ 2} According to the complaint, LCCS received a referral that a baby girl, T.P., had been born by caesarean section on April 10, 2023, with "multiple dysmorphic features." T.P. was placed on respiratory support in the neonatal unit, at Toledo Hospital. (Complaint at ¶ 4). It was further reported to LCCS that mother is a "carrier for multiple genetic syndromes" and had received "minimal prenatal care."

{¶ 3} After giving birth, Mother and T.P.'s umbilical cord tested positive for THC and cocaine (or a metabolite of cocaine). Mother had also tested positive for THC during two prenatal visits. Initially, mother denied using drugs and blamed the positive test results on "smelling drugs from the other apartments in her complex." (*Id.* at ¶ 4). She later admitted to "using cocaine with a friend recently while she was pregnant." (*Id.* at ¶ 5).

{¶ 4} The referral source reported that mother is developmentally delayed and has been diagnosed with schizoaffective disorder, bipolar disorder one with psychosis, anxiety, and post-traumatic stress disorder. (*Id.* at ¶ 4). After LCCS became involved, mother admitted to a caseworker that she suffers from anxiety and PTSD, but she denied the other diagnoses. *Id.* at ¶ 7.

{¶ 5} LCCS alleged in the complaint that mother and father are linked to "A Renewed Mind" for substance abuse treatment, and that mother is linked for parenting

2.

and medication management. Mother and father admitted to the caseworker that "the family home is unsafe for [T.P.] due to the substance abuse in the apartment complex."

{¶ 6} According to the complaint, mother and father are the biological parents to T.P.'s older siblings, all of whom were the subjects of prior dependency, neglect, or abuse cases. Parents' rights were terminated as to the oldest sibling, who was born in 2018 with special needs, by the Muskingum County Court of Common Pleas after parents failed to make progress in case planning services in the areas of substance abuse, mental health, parenting, and visitation. The Lucas County Court of Common Pleas removed a second sibling, born in 2020, from parents and awarded legal custody to a relative. That same court removed the third sibling, born in 2021, and awarded permanent custody to LCCS in February of 2022. *Id.* at ¶ 9.

{¶ 7} During T.P.'s hospitalization, LCCS "received concerns" about the parents' "behaviors." Among other things, parents were not following the feeding schedule, fed T.P. "spoiled formula," awoke the child while sleeping, and failed to maintain her body temperature because they did not keep her "swaddled." *Id.* at ¶ 10.

{¶ 8} Three weeks after T.P.'s birth, on May 1, 2023, LCCS filed a complaint in dependency and neglect and sought permanent custody. The complaint also sought emergency, temporary custody over T.P., which the court granted. Thereafter, the trial court named a court appointed special advocate ("CASA") for T.P., as well as individual counsel and a guardian ad litem ("GAL") for both mother and father.

3.

**{¶ 9}** The court held an adjudicatory hearing on June 12, 2023, and a dispositional hearing immediately thereafter. *See* Juv.R. 34(A). The purpose of an adjudicatory hearing is "to determine whether a child is * * * abused, neglected, or dependent or is otherwise within the jurisdiction of the court." Juv.R. 2(B). If established, a dispositional hearing may then be held "to determine what action shall be taken concerning a child who is within the jurisdiction of the court." Juv.R. 2(O).

**{¶ 10}** According to the July 7, 2023 Judgment Entry, the trial court found that T.P. is a "dependent child," under R.C. 2151.03, and a "neglected child" under R.C. 2151.04. As to disposition, the court found that T.P. cannot be placed with either parent within a reasonable time or should not be placed with either parent, and that it is in T.P.'s best interest to grant permanent custody to LCCS. All of the court's findings were by clear and convincing evidence.

**{¶ 11}** Parents appealed and were appointed common counsel. They raise two assignments of error for our review:

> I. The trial court failed to prove by clear and convincing evidence that the father neglected the child.

> II. The trial court failed to prove by clear and convincing evidence that the child could not be placed with either parent within a reasonable time.

4.

## II. Analysis

### A. Parents failed to show reversible error in the trial court's adjudication of T.P. as a neglected child.

{¶ 12} In their first assignment of error, parents claim that the "*the trial court* failed to prove * * * that father neglected [T.P.]." (Emphasis added.)

{¶ 13} Parents confuse the role of LCCS, which bore the burden of establishing that T.P. was a "neglected child" under R.C. 2151.04, with the role of the trial court, which was tasked with determining whether the agency satisfied its burden. *See generally In re C.T.,* 6th Dist. Sandusky No. S-18-005, 2018-Ohio-3823, ¶ 53. *See also In re Wall*, 60 Ohio App.3d 6, 7, 572 N.E.2d 248 (9th Dist.1989) ("The burden is upon CSB to show by clear and convincing evidence that the child is neglected.").

{¶ 14} In any event, a trial court's adjudication of a child as abused, neglected or dependent must be supported by clear and convincing evidence. *In re C.T.,* at ¶ 52, citing R.C. 2151.35(A)(1); Juv.R. 29(E)(4). Proof by clear and convincing evidence requires that the evidence "'produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. Clear and convincing evidence is a higher degree of proof than preponderance of the evidence, but a lower degree than beyond a reasonable doubt. *In re Alexander C.*, 164 Ohio App.3d 540, 2005-Ohio-6134, 843 N.E.2d 211, ¶ 37 (6th Dist.).

5.

{¶ 15} When an appellate court reviews a trial court's adjudication to determine whether the judgment is supported by clear and convincing evidence, the reviewing court must determine whether the trial court record contains sufficient evidence to satisfy the requisite degree of proof. *In re C.T.* at ¶ 53, citing *In re Alexander* at ¶ 7. That is, we examine the record to determine whether the agency sustained its burden of producing clear and convincing evidence of dependency or neglect as defined by R.C. 2151.03 and 2151.04. *Id.* An appellate court will not reverse a trial court's adjudication where competent and credible evidence supports the findings of fact and conclusions of law. *Id.*

{¶ 16} In this case, parents do not challenge the adjudication of T.P. as a dependent child nor that she was neglected *by* mother. Instead, their claim is limited to the narrow argument that "most of the trial court's findings regarding neglect are based on the condition and actions of the mother" and that "[n]ot a single specific instance points to neglect by father." A plain reading of the trial court's judgment entry undercuts their claim.

{¶ 17} In support of its conclusion that T.P. is a "neglected child," the court found:

Mother and Father have significant developmental and cognitive delays, mental health issues, and substance abuse issues. Due to these concerns, they are unable to adequately care for [T.P.] and her special medical needs. Further, the parents' behavior while they were with [T.P.] in the hospital raises serious questions as to their ability to care for the

6.

child.  [T.P.'s] umbilical cord was positive for several illegal substances that Mother had ingested during her pregnancy.  Therefore, this Court finds that LCCS has presented clear and convincing evidence for this Court to find that this child is a neglected child.  *See* J.E. at 4-5.

{¶ 18} Again, in reviewing the trial court's decision, our role is to examine the record to determine whether the trial court record contains sufficient evidence to satisfy the requisite degree of proof.  *In re C.T.*  Here, we are unable to do that because parents failed to provide a transcript of the June 12, 2023 hearing, as required by App.R. 9(B).  When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and to affirm.  *Knapp v. Edwards Laboratories,* 61 Ohio St.2d 197, 199, 400 N.E.2d 384 (1980).  Moreover, "[i]t is the duty of the appellant to ensure the record, or whatever portions thereof are necessary for the determination of the appeal, are filed with the court in which he seeks review."  *In re F.C.,* 5th Dist. Tuscarawas Nos. 09AP010004, 09AP010005, 2009-Ohio-2402, ¶ 33 citing *Rose Chevrolet, Inc. v. Adams*, 36 Ohio St.3d 17, 19, 520 N.E.2d 564 (1988).

{¶ 19} In their reply, parents argue that the hearing transcript is not "necessary" to resolve the issue(s) before us because their challenge is limited to the "language and conclusions contained in the [trial court's] order."  But, the trial court's conclusions are

7.

based upon the evidence that was before it, notably the testimony of witnesses who appeared at trial and any exhibits admitted therein. Without the transcript, we are unable to examine a critical part of the record to determine whether the trial court had before it evidence sufficient to satisfy the requisite degree of proof. *See, e.g.*, *State v. Reed,* 6th Dist. Ottawa No. OT-19-047, 2021-Ohio-406, ¶ 10, fn. 2 ("Even if the case were not moot, we would be compelled to affirm the trial court because Reed did not file a transcript of the August 7, 2019 bench trial."). Because parents failed to provide this court with the transcript from the hearing, we must presume the regularity of the proceedings below.

{¶ 20} Regardless, we reject parents' argument that the trial court made no "specific" findings as to father. As clearly set forth above, the court found that father's "significant developmental and cognitive delays, mental health issues, and substance abuse issues" as well as his "behavior" caused the court to doubt his ability to care for T.P.

{¶ 21} For all these reasons, parents' first assignment of error is found not well-taken.

## B. Parents failed to show reversible error in the trial court's finding that T.P. could not and should not be returned to them.

{¶ 22} In their second assignment of error, parents again misstate the role of the trial court, ("[the trial court's] order fails to prove * * * that [T.P.] cannot or should not be placed with the Father."). We interpret parents' argument as a claim that the trial

8.

court's finding—that T.P. cannot be placed with father within a reasonable time or should not be placed with him—was not supported by clear and convincing evidence.

{¶ 23} R.C. 2151.414 sets forth "specific findings a juvenile court must make before granting an agency's motion for permanent custody of a child." *In re A.M.,* 166 Ohio St.3d 127, 2020-Ohio-5102, 184 N.E.3d 1, ¶ 18, citing *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 22. As relevant here, the court must find by clear and convincing evidence "(1) that one or more of the conditions in R.C. 2151.414(B)(1)(a) through (e) applies and (2) that a grant of permanent custody is in the child's best interest. R.C. 2151.414(B)(1)." *Id.* Because parents do *not* challenge the juvenile court's findings as to mother *or* whether a grant of permanent custody to LCCS was in T.P.'s best interest, we confine this decision to the juvenile court's determination, under R.C. 2151.414(B)(1)(a), i.e. that T.P. should not, and could not within a reasonable time, be placed with father. *Accord In re A.M.* at ¶ 18.

{¶ 24} R.C. 2151.414(B)(1)(a) requires a finding that the child has not been abandoned or orphaned, has not been in the custody of a public children services agency or a private child placing agency for at least 12 months of a consecutive 22-month period, and cannot be placed with either parent within a reasonable time or should not be placed with either parent; subsection (b) requires a finding that the child is abandoned; subsection (c) requires a finding that the child is orphaned and there are no relatives who are able to take permanent custody; subsection (d) requires a finding that the child has

9.

been in the temporary custody of a public children services agency or a private child placing agency for at least 12 months of a consecutive 22-month period; and subsection (e) requires a finding that the child or another child in the custody of the parent from whose custody the child has been removed has been adjudicated abused, neglected, or dependent on three separate occasions.

{¶ 25} Here, the juvenile court determined that R.C. 2151.414(B)(1)(a) applies to the facts of this case. Therefore, the court was required to consider whether granting permanent custody to the agency is in the child's best interest *and* whether any of the factors enumerated in R.C. 2151.414(E) are present that would indicate that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. *In re B.K.*, 6th Dist. Lucas No. L-10-1053, 2010-Ohio-3329, ¶ 42-43. A court need only find one (E) factor present to support a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. *In re C.F.* at ¶ 50, citing *In re William S.*, 75 Ohio St.3d 95, 661 N.E.2d 738 (1996), syllabus.

{¶ 26} In this case, the court found that R.C. 2151.414(E)(2) and (11) apply. Those sections provide,

> (E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a

10.

reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(2) Chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;

* * *

(11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section 2151.353 or 2151.415 of the Revised Code, * * * and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior

termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.

**{¶ 27}** All of the court's findings under R.C. 2151.414 must be by clear and convincing evidence. *In re Tashayla S.*, 6th Dist. Lucas No. L-03-1253, 2004-Ohio-896, ¶ 14.

**{¶ 28}** We review a trial court's determination in a permanent custody case under a manifest-weight-of-the-evidence standard. *In re P.W.*, 6th Dist. Lucas No. L-12-1060, 2012-Ohio-3556, ¶ 20. In doing so, we must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way in resolving evidentiary conflicts so as to create such a manifest miscarriage of justice that the decision must be reversed. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). But, while we review the evidence and consider the witnesses' credibility, we must be mindful that the juvenile court, as the trier of fact, is in the best position to weigh evidence and evaluate testimony. *In re. P.W.* at ¶ 20.

**{¶ 29}** As to Section (E)(2), the trial court made the following findings:

As to Mother and Father, this Court finds under R.C. 2151.414(E)(2), that the parents suffer from such severe intellectual disability, mental illness, and chemical dependency that Mother and Father are unable to provide an adequate permanent home for the child at the present time. Additionally, this Court find that it is highly unlikely that

12.

Mother or Father will remedy their intellectual disability, chronic mental illness and chemical dependency within one year from the trial date of this matter.

As set forth more fully above, both parents have significant cognitive and developmental delays, mental health concerns, and substance abuse issues. These issues have been present since the first sibling case in 2018 and have caused subsequent removals of all of their children. * * * Father is linked to services from the Board of Developmental Disabilities. [T.P.] has significant medical needs that render the parents unable to care for her. (J.E. at 6).

{¶ 30} As to Section (E)(11), the trial court made the following findings:

As to Mother and Father, this Court finds under R.C. 2151.414(E)(11), that Mother and Father have parental rights involuntarily terminated with respect to [T.P.'s] sibling [sic] pursuant to R.C. 2151.353, R.C. 2151.414, or R.C. 2151.415 * * * and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.

As set forth more fully above, Mother and Father have three older children that have been removed from their custody. Permanent custody

has been awarded to MCCS and LCCS for two of the children, as well as legal custody to a relative of the third. The parents have been offered case plan services since the inception of the original sibling case in 2018. Parents failed to overcome the reasons for removal in the past sibling cases and presented no evidence to the contrary.

Accordingly, this Court finds that LCCS has presented clear and convincing evidence that [T.P.] cannot be placed with either parent within a reasonable time or should not be placed with either parent for the reasons set forth above. (J.E. at 7).

{¶ 31} On appeal, parents do nothing more than reassert their facially inaccurate claim that "most" of the trial court's findings were not specific to father. But, they do not argue, much less point to any *evidence,* that the trial court erred when it determined that T.P. could not, or should not, be placed with father. Likewise, they *do not contest* findings by the trial court that father suffers from severe intellectual disability, mental illness, or chemical dependency or that such condition(s) render him unable to provide a permanent home for T.P., nor do they dispute the trial court's finding that father's parental rights were terminated as to any, or all, of T.P.'s siblings. And, even if they did, we could not consider such arguments, given the absence of a transcript. *Appeal of Babcock*, 6th Dist. Sandusky No. S-89-4, 1990 WL 21565, *7 (Mar. 9, 1990) ("Without a transcript of [the dispositional] proceedings, [parents] cannot demonstrate the errors

14.

complained of and this court can only presume the regularity of the trial court's proceedings and affirm its judgment.").

{¶ 32} In the absence any evidence to support a claim that the trial court erred in determining that T.P. could not within a reasonable time or should not be placed with father, we affirm the trial court's findings under R.C. 2151.414(B)(1)(a). Accordingly, parents' second assignment of error is not well-taken.

### III. Conclusion

{¶ 33} For the reasons expressed above, we find that parents failed to show that the trial court's decision was not supported by clear and convincing evidence or was against the manifest weight of the evidence. We further find that parents' assignments of error are without merit. Therefore, the July 7, 2023 judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Pursuant to App.R. 24, costs of this appeal are assessed to parents.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.                    _____
                                                         JUDGE

Christine E. Mayle, J.

                                        _____
Charles E. Sulek, J.                                     JUDGE
CONCUR.

                                        _____
                                                         JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.